[Cite as *In re D.K.*, 2022-Ohio-2968.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re D.K.                                                Court of Appeals No.  L-22-1073

                                                          Trial Court No.  JC 21284123


                                                          **DECISION AND JUDGMENT**

                                                          Decided:  August 24, 2022
                                    * * * * *

Rebecca L. West-Estell and Angela Y. Russell, for appellee.

Christopher S. Clark, for appellant.

                                    * * * * *

**DUHART, J.**

{¶ 1} This is an appeal from the March 9, 2022 judgment of the Lucas County

Court of Common Pleas, Juvenile Division, which terminated the parental rights of

appellant, T.D., and granted permanent custody of the child, D.K., to appellee, Lucas

County Children Services ("LCCS").  For the reasons that follow, we affirm.

{¶ 2} Appellant sets forth one assignment of error:

I. The trial court erred in finding by clear and convincing evidence that it is in the best interest of the child to terminate appellant-mother's parental rights and to award permanent custody of the children [sic] to Lucas County Children Services ("LCCS").

**Background**

{¶ 3} Appellant is the biological mother of four children, the youngest is D.K., who was born in March 2021, and is the subject of the permanent custody award in this appeal. D.K.'s biological father has not been identified. Appellant lost custody of her three older children, and those children live with an aunt.

{¶ 4} Appellant admitted using substances throughout her pregnancy with D.K., and received no prenatal care. The day before D.K. was born, appellant used heroin. At the time of D.K.'s birth, appellant tested positive for substances and was taking methadone. When D.K. was born, she tested positive for cocaine and methadone, and was prescribed methadone for withdrawal. D.K. was in the NICU for two weeks.

{¶ 5} On April 12, 2021, a complaint in dependency, neglect and abuse was filed with respect to D.K. That same day, a shelter care hearing was held and LCCS was awarded interim temporary custody of the child. D.K. was placed in a foster home.

{¶ 6} On September 23, 2021, LCCS filed a motion for permanent custody of D.K. On January 19, 2022, a trial was held but appellant did not attend. On March 9, 2022, the

2.

court issued its judgment entry awarding permanent custody of D.K. to LCCS.  Appellant appealed.

## The Trial

{¶ 7} LCCS called several witnesses to testify, including caseworkers and the guardian ad litem ("GAL").  The testimony relevant to the appeal is summarized below.

## Tiffany LaPlante

{¶ 8} LaPlante is employed by LCCS and was the ongoing caseworker for D.K. from May 17, 2021, through November 24, 2021.  No father was identified for D.K., although appellant named C.K. as the alleged father.  C.K. never presented himself for paternity testing, and never established paternity.  LaPlante did not believe C.K. was D.K.'s biological father because D.K. is biracial, while C.K. and appellant are white.

{¶ 9} LaPlante testified appellant's case plan services "were to include mental health as well as substance abuse.  There was also concerns for housing * * * [and] possible concerns for domestic violence."  Appellant had ongoing substance use and admitted she was actively using drugs.  In a July 2021 drug screen, appellant tested positive for alcohol, fentanyl, cocaine and THC.  Appellant said she was struggling, living transiently, and had a problem but was going to go to detox at Midwest Detox.  To LaPlante's knowledge, appellant never made it through the seven-day detox at Midwest Detox in order to go to Midwest Recovery.  Appellant declined mental health programs, because her main concern was substance abuse.

3.

{¶ 10} LaPlante stated that visitations started on May 17, 2021, and appellant had four visits scheduled. Appellant only attended two visits, and there were concerns that she was under the influence. LaPlante ended the June 21, 2021 visit early because appellant was falling asleep with D.K. Thereafter, six visits were scheduled, but appellant did not participate in any of those visits.

{¶ 11} LaPlante had two face to face meetings with appellant, the last of which was July 30, 2021. LaPlante had phone conversations with appellant in the beginning of the case, but after their last meeting, phone contact was sporadic. LaPlante sent search letters for appellant, which came back with no address information. LaPlante tried to link appellant with a DART officer, but due to the lack of contact with appellant, it did not occur.

{¶ 12} LaPlante stated D.K. is in foster care and is doing "[p]henomenally." When D.K. was first placed, she had minimal issues pertaining to being born drug addicted, like heavy breathing, almost a cough, and raspiness. D.K. outgrew these issues, and is meeting all of her milestones, and sometimes surpassing them. There are other children in the foster home, and D.K. is bonded to them and her caregivers. The foster family is interested in adopting D.K.

**Danielle Stroble**

{¶ 13} Stroble is employed by LCCS as an ongoing caseworker and was assigned D.K.'s case on January 3, 2022. The case notes show LCCS had no contact with

4.

appellant since July 2021, although it appeared appellant attended a visit with D.K. on August 4, 2021. Stroble had no contact with appellant and does not know appellant's whereabouts. To Stroble's knowledge, appellant has not completed any case plan services. The services included mental health counseling, substance abuse treatment, housing and parenting, due to losing legal custody of children previously. Stroble has no knowledge that any potential father of D.K. was identified.

{¶ 14} As to D.K., she engaged with Help Me Grow, due to being born positive for substances, but was discharged. D.K. has a lazy eye, which is being monitored. Stroble talks with D.K.'s caregivers, who are interested in adopting D.K.

{¶ 15} Stroble testified LCCS is asking for permanent custody of D.K. so D.K. can be adopted. Stroble believes this is in D.K.'s best interest since appellant lost permanent custody of three other children, appellant is actively engaging in substance abuse, and D.K. is thriving in the wonderful home where she was placed.

### GAL Gabrielle Schramm

{¶ 16} Schramm is the GAL appointed to represent D.K. on April 27, 2021. Schramm conducted an independent investigation, met with D.K. every month since May of 2021, and had phone contact one time with appellant, which appellant cut short. Appellant did not identify any potential father besides C.K. Schramm does not know appellant's whereabouts.

5.

**{¶ 17}** Schramm described D.K. as beautiful, happy and a fantastic baby. D.K. is so excited to see Schramm and sits at the table with the foster parents and Schramm, and giggles and laughs and interacts with Schramm. D.K. is crawling. There is a concern that D.K. has a lazy eye, and she has seen a doctor for it. There are three other children in D.K.'s foster home, and D.K. is very bonded with them. D.K. is also bonded with her caregivers, she loves her foster mother, and especially loves her foster father. The caregivers are very interested in adopting D.K., should she become available.

**{¶ 18}** Schramm authored a report, which accurately reflects her investigation, and her recommendation is that permanent custody of D.K. be awarded to LCCS, so D.K. can be adopted. The GAL believes it is in D.K.'s best interest, as D.K. is in a great home where she is thriving and genuinely loved, while appellant has not engaged in any services, she has a substance abuse issue and she has not consistently visited D.K.

## Trial Court's Decision

**{¶ 19}** In its March 9, 2022 judgment entry, the court found, by clear and convincing evidence, that D.K. cannot be placed with either parent within a reasonable time and should not be placed with either parent under R.C. 2151.414(B)(1)(a). The court further found, by clear and convincing evidence, that pursuant to R.C. 2151.414(D)(1), it is in the child's best interest to grant permanent custody to LCCS, and it would be contrary to the child's best interest to be reunified with either parent.

6.

**{¶ 20}** The court also found, pursuant to R.C. 2151.414(E)(1), that notwithstanding reasonable case planning and diligent efforts by LCCS to assist the parents to remedy the problems that caused D.K. to be placed outside of the home, appellant has failed continuously and repeatedly to substantially remedy the conditions causing D.K.'s removal. Appellant failed to complete case plan services.

**{¶ 21}** The court found, pursuant to R.C. 2151.414(E)(2), that appellant's mental illness and substance abuse are so severe that she is unable to provide an adequate permanent home for D.K.

**{¶ 22}** The court found, pursuant to R.C. 2151.414(E)(4), that appellant has demonstrated a lack of commitment to D.K. by failing to regularly support or visit D.K.

**{¶ 23}** The court further found, pursuant to R.C. 2151.414(E)(10) and R.C. 2151.011(C), that appellant and the alleged fathers abandoned D.K., as appellant and the alleged fathers have not visited with D.K. for more than 90 days.

**{¶ 24}** The court also found, pursuant to R.C. 2151.414(E)(16), that appellant and the alleged fathers failed to appear for the permanent custody proceeding despite having been properly served with notice, appellant lost legal custody of three other children, appellant failed to contact LCCS in over six months, and due to appellant's failure to visit D.K. for over six months, the child has not been able to bond with appellant.

**{¶ 25}** The court also found, under R.C. 2151.414(D)(1)(d), that granting permanent custody to LCCS for adoptive placement is in D.K.'s best interest, as she

7.

needs a legally secure permanent placement which cannot be achieved without granting permanent custody to LCCS.  Lastly, the court found, under R.C. 2151.414(D)(1)(e), that the factor listed in R.C. 2151.414(E)(10) applies to appellant and both alleged fathers, as they have abandoned the child.

### Standard - Permanent Custody

{¶ 26} A juvenile court's decision in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence.  *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11.  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."  *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988).  Thus, a judgment supported by some competent, credible evidence going to all essential elements of the case is not against the manifest weight of the evidence.  *Id.*; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 27} The juvenile court may grant permanent custody of a child to a children services agency if the court finds, by clear and convincing evidence, two statutory

8.

prongs: (1) the existence of at least one of the four factors set forth in R.C. 2151.414(B)(1)(a) through (d); and (2) the child's best interest is served by granting permanent custody to the agency. *In re A.H.* at ¶ 12; R.C. 2151.353(A)(4). Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 28} As to the first prong, R.C. 2151.414(B)(1)(a) provides that "the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent." When making a finding under R.C. 2151.414(B)(1)(a), the court must find, by clear and convincing evidence, that only one of the factors enumerated in R.C. 2151.414(E) exists. *In re A.H.* at ¶ 15. Here, the court found R.C. 2151.414(E)(1), (2), (4), (10) and (16) applied, and those factors are:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

9.

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child.

* * *

(16) Any other factor the court considers relevant.

{¶ 29} As to the second prong, the best interest of the child, when making this determination, R.C. 2151.414(D)(1) provides that the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 30} Here, the court found R.C. 2151.414(E)(10) applies, that "[t]he parent has abandoned the child."

**First Assignment of Error**

{¶ 31} Appellant argues the trial court erred in finding, by clear and convincing evidence, that it is in the best interest of D.K. to terminate appellant's parental rights and to award permanent custody to LCCS. Appellant observes a trial court's decision in a permanent custody case will not be reversed on appeal unless the decision is against the manifest weight of the evidence.

{¶ 32} Appellant acknowledges that she experienced personal problems at the time of D.K.'s birth and immediately after, but she notes there was a period of only six months from the time of D.K.'s birth until the motion for permanent custody was filed. She asserts that six months did not provide a reasonable time for her to make the personal changes necessary that would have allowed D.K. to be placed with her natural mother. Appellant references a letter she wrote, attached to the notice of appeal, in which she recognizes her prior wrongdoings, but indicates that she enrolled in a residential treatment facility on February 24, 2022, and is dealing with substance abuse and mental health issues.

{¶ 33} Appellant argues LCCS failed to meet its burden, by clear and convincing evidence, that it is in the child's best interest to terminate her parental rights. Appellant maintains D.K.'s best interest would be served by granting custody to appellant so she could raise D.K.

12.

**{¶ 34}** LCCS counters the trial court determined that it was in D.K.'s best interest for permanent custody to be awarded to LCCS, and the court supported its decision by finding several R.C. 2151.414(E) factors applied. LCCS contends the court found LCCS gave appellant sufficient time to engage in case plan services and remedy the problems that caused D.K. to be placed outside of the home, including: serious substance abuse; mental health; parenting and lack of stable housing. LCCS argues in the six months before the motion for permanent custody was filed, appellant failed to engage in case plan services, she admitted to actively using substances, she consistently missed visits with D.K. for significant periods of time, she stopped communicating with LCCS, and she failed to attend the permanent custody hearing. LCCS also notes that appellant lost legal custody of three other children. LCCS submits the trial court properly found that an award of permanent custody of D.K. to LCCS was warranted pursuant to R.C. 2151.414.

**Analysis**

**{¶ 35}** As to the first prong of the permanent custody test, the court determined R.C. 2151.414(B)(1)(a) applied, as did R.C. 2151.414(E)(1), (2), (4), (10) and (16). A review of the record reveals the following: appellant failed continuously and repeatedly to substantially remedy the conditions causing D.K.'s removal despite reasonable case planning and diligent efforts by LCCS, and appellant failed to complete case plan services; appellant's mental illness and substance abuse are so severe that she is unable to provide an adequate permanent home for D.K.; appellant has demonstrated a lack of

13.

commitment to D.K. by failing to regularly support or visit D.K.; appellant abandoned D.K.; and appellant failed to appear for the permanent custody proceeding, appellant lost legal custody of three other children, appellant failed to contact LCCS in over six months, and due to appellant's failure to visit D.K. for over six months, D.K. has not been able to bond with appellant.

{¶ 36} We conclude the record contains competent, credible evidence supporting the court's finding that D.K. cannot be placed with appellant within a reasonable period of time or should not be placed with appellant.

{¶ 37} Regarding the second prong of the permanent custody test, the court found that granting permanent custody of D.K. to LCCS for adoptive placement is in D.K.'s best interest, as she needs a legally secure permanent placement which cannot be achieved without granting permanent custody to LCCS. The court also found appellant abandoned D.K.

{¶ 38} Upon review, the record shows D.K. has been in her foster home her entire life, except for the time she was in the hospital, when she was born with drugs in her system and received treatment for withdrawal symptoms. While in her foster home, D.K. has received all of the necessary medical care and she is meeting or exceeding her milestones. D.K. is bonded with her foster family, she is happy, loved and thriving. In addition, the GAL recommended that permanent custody of D.K. be awarded to LCCS, so D.K. can be adopted.

14.

**{¶ 39}** We conclude there is competent, credible evidence in the record to support the juvenile court's finding, under a clear and convincing standard, that terminating appellant's parental rights and granting permanent custody of D.K. to LCCS for adoptive placement is in D.K.'s best interest. We further conclude the juvenile court's judgment is not against the manifest weight of the evidence. Accordingly, appellant's first assignment of error is not well-taken.

**{¶ 40}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     _____
                JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.     _____
CONCUR.              JUDGE

              _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.